UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| BILLY HANDSHOE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | No. 7:19-CV-6-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| DEPUY SYNTHES SALES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Billy Handshoe filed suit in Floyd Circuit Court, alleging damages as a result of the supposed failure of the Attune Knee System, a device used during Handshoe's knee replacement surgery. DE 1-1 Complaint ¶ 5. Handshoe asserts claims against DePuy Synthes Sales, Inc. d/b/a DePuy Synthes Joint Reconstruction and other related entities associated with the design, manufacture, marketing, sale, or distribution of the device (collectively, Device Defendants); the hospital where Handshoe's knee replacement took place, Highlands Hospital Corporation d/b/a Highlands Regional Medical Center; and a DePuy sales representative for the device, Dan Hopewell, LLC and Dan Hopewell (collectively, Hopewell). *Id.* ¶¶ 6–36 & Counts I–XII.

Handshoe is a Kentucky citizen. *Id.* ¶ 5. Device Defendants are citizens of Delaware, Indiana, Massachusetts, New Jersey, the United Kingdom, and Ireland. DE 1 ¶¶ 6–13. Highlands is a Kentucky citizen. Complaint ¶ 204. Citizenship of Dan Hopewell,

1

LLC, follows the citizenship of its sole member,[1] Dan Hopewell, who Device Defendants allege is a Kentucky resident. DE 1 ¶ 13. In short, Handshoe and Device Defendants are diverse, but Handshoe, Highlands, and (likely) Hopewell share Kentucky citizenship.[2]

**I.    Posture**

Device Defendants filed a notice of removal. DE 1. The Court then ordered Device Defendants to show cause why the case should not be remanded for lack of subject-matter jurisdiction. DE 6. Device Defendants (DE 22) and Handshoe (DE 38) responded. Device Defendants replied. DE 40.

Based on lack of diversity, Handshoe moves to remand this case to Floyd Circuit Court. DE 23. Device Defendants opposed. DE 39. Handshoe replied. DE 41. The show-cause and motion filings fully cover the relevant issues.

**II.   Discussion**

The subject-matter jurisdiction of federal courts is limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994). There is a presumption against federal subject-matter jurisdiction, which the party seeking to proceed in federal court must overcome. *Id.*

As relevant to this matter, a federal court may exercise subject-matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). Diversity must be complete—

---

[1] *Delay v. Rosenthal Collins Grp., Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009) ("The general rule is that all unincorporated entities--of which a limited liability company is one--have the citizenship of each partner or member.")

[2] The removal papers and Complaint do not effectively allege Hopewell's citizenship, but DE 22, filed by the Device Defendants, characterizes Hopewell as a Kentucky citizen. The parties before the Court agree on and argue presuming this fact, so the Court treats Hopewell as not diverse from Handshoe.

that is, no plaintiff may share state citizenship with any defendant. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

The federal removal statute, 28 U.S.C. § 1441, authorizes removal of cases from state courts to federal courts that would have had original jurisdiction over the action. § 1441(a)–(b). "The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006). The Court must resolve all doubts about the propriety of contested removal in favor of remand and strictly construe removal statutes. *Id.*; *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Here, as the removing party invoking federal jurisdiction, Device Defendants must demonstrate a jurisdictional basis. Despite the presence of three non-diverse defendants, Device Defendants argue that the Court has diversity-based subject-matter jurisdiction. Device Defendants ask the Court to disregard Highlands's citizenship because Handshoe fraudulently misjoined his hospital-negligence claim with the products-liability and other claims against Device Defendants.[3] Device Defendants further contend that Hopewell's citizenship is irrelevant because Handshoe fraudulently joined Hopewell, against whom Handshoe asserts negligence and negligent misrepresentation claims. Device Defendants also argue that such fraudulent joinder renders irrelevant the procedural issue of Hopewell's failure to join in or consent to removal.

Device Defendants thus raise two distinct joinder issues: fraudulent misjoinder and fraudulent joinder. Both doctrines relate to treatment of claims against non-diverse

---

[3] Highlands filed an Answer but nowhere asserted fraudulent misjoinder under Rule 20. *See* DE 7.

defendants that ostensibly operate to defeat complete diversity and thereby prevent removal. A fraudulent misjoinder theory attacks a facially viable claim based on the absence of a joinder nexus between claims asserted against diverse and non-diverse defendants; a fraudulent joinder theory disputes the facial validity of a claim against a non-diverse defendant.

The Court concludes that Handshoe properly joined Highlands, a party allegedly sharing fault and causing harm in the criticized knee replacement surgery. Fraudulent misjoinder as a doctrine (extant or not in this Circuit) thus would not impact jurisdiction here. Because the parties are not completely diverse, the Court remands without evaluating Hopewell's joinder or other removal mechanics.

*Fraudulent Misjoinder*

Fraudulent misjoinder, as a concept, originated in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), and the doctrine permits a court to ignore the citizenship of non-diverse defendants who "hav[e] no real connection with the controversy." *Id.* at 1360, *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) (internal quotation omitted). *Tapscott* upheld a district court's assertion of subject-matter jurisdiction based on its finding that "there was an 'improper and fraudulent joinder, bordering on a sham.'" *Id.* (internal citation omitted). Per the case, although mere misjoinder is not per se fraudulent, egregious misjoinder may be fraudulent and therefore justify severance. *Id.* In *Tapscott*, the joinder of "wholly distinct" sets of claims against diverse and non-diverse defendants was improper. *Id.* at 1355, 1359–60. Any commonality between the claims, based on alleged violations of the same state-law provisions, was insufficient under Rule 20 of the Federal Rules of Civil Procedure. *Id.* at

1360. Because joinder under Rule 20 was improper, and egregiously so, the district court correctly ignored the citizenship of the non-diverse defendants, "asserted jurisdiction and severed and remanded the remainder of the action to state court." *Id.*

At its core, the doctrine operates to expand the subject-matter jurisdiction of the federal courts, which contravenes the Sixth Circuit dual mandates that doubts be resolved in favor of remand and that removal statutes be strictly construed. *See Eastman*, 438 F.3d at 549; *Coyne*, 183 F.3d at 493. These background principles fix the lens through which the Court views competing arguments for and against the application of the doctrine.

The fraudulent-misjoinder doctrine is of relatively recent vintage and questionable viability. To date, the Sixth Circuit has not vetted the theory,[4] and district court approaches sharply diverge. *See Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013); *Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. 12–131–ART, 2013 WL 28378, at *17–19 (E.D. Ky. Jan. 2, 2013) (declining to recognize fraudulent misjoinder). *But see Asher v. Minn. Mining & Mfg. Co.*, No. 04-CV-522-KKC, 2005 WL 1593941, at *7 (E.D. Ky. June 30, 2005) (applying fraudulent-misjoinder doctrine and noting "that something more than 'mere misjoinder' is required"). In this District, *Asher* flies solo.

This Court doubts the foundation of fraudulent misjoinder for the persuasive reasons stated by the numerous courts in this district that have declined to apply the

---

[4] The Sixth Circuit has suggested by its language that fraudulent joinder is the only theory by which a facially non-removable case becomes removable on the basis of diversity. *Jerome-Duncan, Inc.*, 176 F.3d at 907 ("When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand *only* by demonstrating that the non-diverse party was fraudulently joined.") (internal citation omitted) (emphasis added).

5

doctrine. *See Gaither v. Beam Partners, LLC*, No. 3:16-cv-0094-GFVT, 2017 WL 1217166, at *11 (E.D. Ky. Mar. 31, 2017) ("This court reaches the same conclusion as the majority of courts in the Eastern District of Kentucky by deciding that application of fraudulent misjoinder should be left to the state courts."); *Bostic v. GlaxoSmithKline, LLC*, No. 15-84-ART, 2015 WL 8486181, at *1–2 (E.D. Ky. Dec. 9, 2015) (noting "unsettled" nature of doctrine, its complexities, and its inapplicability to the facts of the case); *Williams*, 2013 WL 28378, at *6 ("The Sixth Circuit has yet to adopt this rule, and until that day comes this Court will not recognize it."); *Estate of Owens v. E.I. Dupont De Nemours & Co.*, No. 12-111-DLB, 2013 U.S. Dist. LEXIS 189836, at *17–20 (E.D. Ky. June 17, 2013) (rejecting expansive interpretation of removal statute and noting unresolved questions about fraudulent misjoinder); *Freitas v. McKesson Corp. (In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.)*, 889 F. Supp. 2d 931, 943 (E.D. Ky. 2012) ("Given the unsettled law surrounding the doctrine, the Court sees no reason to employ it here."); *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011) ("Therefore, in light of the questionable basis of the Court's authority to conduct fraudulent-misjoinder analysis and the numerous unsettled doctrinal questions, the Court agrees with the other district courts that have left the whole enterprise to the state courts.").

This Court notes the following doctrinal difficulties, many of which the above-referenced decisions discuss as justifications for rejecting fraudulent misjoinder: the contested applicability of the doctrine, the degree (egregious or otherwise) of misjoinder sufficient to justify its application, the unsettled choice between state and federal joinder law, and, if state law controls, the resulting anomaly of involving federal courts in deciding

issues of state joinder law. *See Geffen v. General Elec. Co.*, 575 F. Supp. 2d 865, 871 (N.D. Ohio 2008) (articulating these unresolved inquiries and rejecting fraudulent misjoinder).

Moreover, fraudulent misjoinder is a solution without a problem. Rather, "the problem that the fraudulent misjoinder doctrine is designed to address can ordinarily be resolved by having the state court rule on the propriety of the joinder in the first instance, and permitting removal if the parties and claims are severed into two or more cases, at least one of which is clearly removable." *Bird v. Carteret Mortg. Corp.*, No. 2:06-CV-588, 2007 WL 894841, at *5 (S.D. Ohio Mar. 22, 2007). Without resort to fraudulent misjoinder, a defendant may nonetheless remove a case to federal court by filing a timely notice *after* a state court has decided misjoinder issues. 28 U.S.C. § 1446(b)(2)(3) ("[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."); *Cent. Bank v. Jerrolds*, No. 14-1163, 2015 WL 1486368, at *4 (W.D. Tenn. Mar. 31, 2015) (discussing this procedure as an alternative to recognizing fraudulent misjoinder).[5]

In sum, jurisdictional presumptions and binding rules of statutory construction, as well as the complexities of fraudulent misjoinder and its relative lack of necessity, support the conclusion that the doctrine is "neither wise nor warranted." *Bird*, 2007 WL 894841,

---

[5] The one-year removal limitation provides an exception for bad-faith removal-prevention tactics. *See* 28 U.S.C. § 1446(c)(1). Thus, a defendant who successfully persuades a state court of misjoinder may, in the proper case, seek removal and argue that the joinder was, initially, in bad faith. *Jerrolds*, 2015 WL 1486368, at *4 ("While some small number of misjoinder cases will be barred from federal court by the one year limitation on removal, § 1446(c)(1) anticipates just this result.").

at *5. Consequently, the Court declines to apply fraudulent misjoinder[6] as a means of disregarding the lack of complete diversity. Thus, the Kentucky citizenship of Highlands justifies remand.

Even if the Court conducted a fraudulent-misjoinder analysis, the doctrine would not, on these facts, warrant the result that Device Defendants seek. Rule 20 governs the federal joinder inquiry.[7] Rule 20 permits joinder when a right to relief is asserted "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Additionally, Rule 20 conjunctively applies if "*any* question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B) (emphasis added). In the context of interpreting the similar language of Rule 13, the Sixth Circuit has stated that "[t]he words 'transaction or occurrence' are given a broad and liberal interpretation in order

---

[6] Perhaps pleading a true sham or linkage of stark attenuation might be more persuasive. Thus, say Handshoe had suffered a fender bender on the way to surgery and tried to join the non-diverse driver and assert a property damage tort against him along with the DePuy surgical claims. There, the targeted events, merely sharing a day or being part of the same sequential chain, would present a difficult and perhaps egregious joinder case. Here, as the merits discussion shows, the claims against Highlands and the Device Defendants, being closely linked and properly joined, lie nowhere near the boundaries of egregious joinder.

[7] As noted, the potential choice-of-law issue is one of the complexities motivating this Court's rejection of the fraudulent-misjoinder inquiry. Device Defendants contend, and *Asher* agrees, that "the Kentucky and federal rules regarding misjoinder are, in all significant respects, identical." 2005 WL 1593941, at *7. CR 20.01 of the Kentucky Rules of Civil Procedure provides that "[a]ll persons may be joined in one action as defendants if there is asserted against them any right to relief jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Nonetheless, the fact that (for Kentucky purposes) the state and federal rules align does not undercut the impact of the choice-of-law question as a driver for generally declining adoption of the fraudulent-joinder inquiry.

to avoid a multiplicity of suits." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969).

Critically, "the test for joinder is not whether claims arise from the same source of law." *Murriel-Don Coal Co.*, 790 F. Supp. 2d at 600. In *Williams*, Judge Thapar found that claims asserted against the manufacturers and marketers of a mesh implant were properly joined with claims against the doctor who placed the device. 2013 WL 28378, at *1, 6. Judge Thapar likewise found no misjoinder for malpractice claims against healthcare providers and products-liability claims against pharmaceutical companies based on injuries arising out of the same product. *Bostic*, 2015 WL 8486181, at *1–2 (noting that causation of injuries was a common question of fact as to each defendant). When a workplace accident involving a tank car caused injuries that were compounded by inadequate emergency medical assistance, Judge Bunning concluded that the claims against the decedent's employer and the manufacturer and servicer of the tank car were properly joined with claims against the emergency medical personnel. *Estate of Owens*, 2013 U.S. Dist. LEXIS 189836, at *20–21. *Owens* identified several common questions of fact: "the cause of Owens' injuries, whether Owens' contributed to his injuries in any way, whether any damages should be apportioned among the Defendants." *Id.*

Here, Handshoe properly asserts products liability and other claims against Device Defendants in conjunction with a hospital-negligence claim against Highlands. Although Device Defendants correctly note that these claims arise from difference sources of law and that each claim will require some quantum of evidence that is distinct from the other, these observations do not suffice to show fraudulent misjoinder, which—according to the

9

Eleventh Circuit, the author of the doctrine—requires *egregious* forum manipulation. *See Tapscott*, 77 F.3d at 1360.

Indeed, even if fraudulent misjoinder required mere (rather than egregious) improper joinder of claims, Handshoe's request for remand would be justified. Handshoe alleges injuries that resulted from a purportedly defective device and that Highlands knew or should have known about adverse event reports associated with the device. The marketing, sale, and implantation of the device constitute a series of plainly related transactions or occurrences within the meaning of Rule 20 (and the state joinder rule), and the causation and apportionment of fault for Handshoe's alleged injuries implicate common questions of fact and law as to all defendants.[8]

---

[8] The cases that Device Defendants cite to the contrary do not compel a contrary result. *See Hughes v. Sears, Roebuck & Co.*, No. 2:09-cv-93, 2009 WL 2877424, at *1, 5–7 (N.D. W. Va. Sept. 3, 2009) (finding fraudulent misjoinder of products-liability claims asserted against the seller of an allegedly defective treadmill and medical-malpractice claims for misdiagnosis asserted against the plaintiff's treating physician). In *Hughes* the physician "had no control over the allegedly defective product," so there was no "bridge" between the medical-malpractice and products-liability claims. *Id.* at *6. Handshoe's claims against the hospital undisputedly concern one or more physicians or other hospital personnel with some degree of "control over the allegedly defective [device]." *See id.*

Device Defendants further rely on four cases that discuss fraudulent joinder in the context of multi-district litigation. Three of them explicitly identify the nature of multi-district litigation as an influential factor in the fraudulent-misjoinder analysis. *See Akin v. Stryker Corp. (In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.)*, No. 13–1811 (DWF/FLN), 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013) ("Furthermore, because of the nature, stage, and progression of this MDL, 'the rights of the parties and interest of justice is best served by severance.'" (quoting Fed. R. Civ. P. 21)); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504 (E.D. Cal. 2008) ("Defendants' legal and factual position is compelling, especially in the context of MultiDistrict Litigation."); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 07-1487, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) ("Furthermore, because of the nature, stage, and progression of this MDL, especially in light of the proposed settlement involving Guidant, 'the rights of the parties and interest of justice is best served by severance.'" (quoting Fed. R. Civ. P. 21)). *But see Smith v. Hendricks*, 140 F. Supp. 3d 66, 73–77 (D.D.C. 2015) (concluding that medical-malpractice claims "[did] not arise out of the same transaction, occurrence, or

Handshoe's case centers on and culminates in device implantation and failure. Those are key factual events in the torts pursued against Device Defendants. However, those also are key events in the tort alleged against Highlands. In Kentucky, a hospital owes a duty of reasonable care. *Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 690–92 (Ky. 2017), *reh'g denied* (Feb. 15, 2018) ("What has remained constant is that hospitals are required to exercise ordinary care. Hospitals have a duty to make sure patients receive a medically acceptable standard of care, and this duty extends to making sure qualified staff are providing the appropriate medical care. The hospital can certainly be liable for its own negligence, separate and distinct from any negligence on the part of a physician—even a non-employee physician.") (citations omitted). That duty extends to, situationally, care in the selection of staff and medical equipment. *Johnson v. BLC Lexington SNF, LLC*, No. CV 5:19-064-DCR, 2019 WL 2476739, at *8 (E.D. Ky. June 13, 2019) ("The doctrine of 'corporate negligence' provides that hospitals owe a direct duty to patients to ensure their safety and well-being. . . . The doctrine imposes duties on hospitals to: (1) use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) select and retain only competent physicians; (3) oversee the patient care provided by all persons who practice medicine within its walls; and (4) formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients.") (citations omitted). Handshoe contends that Highlands knew or (by virtue of access to MAUDE or perhaps through the influence of and information supplied by Hopewell) should have known that the Attune Knee System was defective. *See* DE 1-

---

series of transactions" as products-liability claims, without commenting on the import of pending multi-district litigation). Because multi-district litigation is not at issue here, the Court finds the cited decisions unpersuasive.

1 Complaint Count XI. What Highlands knew (and what there was for Highlands to know) surely are factual issues the case against the hospital shares, intimately, with the case against Device Defendants. Device Defendants characterize the claims as addressing "factually dissimilar" events; to the Court, the claims involve scrutiny of closely associated parts or roles in the same surgical and treatment episode. Added to this are the characterizations of Highlands as an actual or functional product "seller or other distributor," *id*. ¶ 207, which further draw the Highlands liability analysis into line with the products liability analysis affecting the Device Defendants.[9] Joinder was proper and most certainly not egregiously improper.

*Fraudulent Joinder & Procedural Defect*

Because the Court's resolution of the fraudulent misjoinder issue destroys complete diversity and deprives the Court of subject-matter jurisdiction, the Court need not reach Device Defendants' fraudulent joinder or removal consent arguments.

For these reasons, the Court **GRANTS** DE 23 and **ORDERS** as follows:

1. The Court **REMANDS** this matter to Floyd Circuit Court; and
2. The Court **DIRECTS** the Clerk to strike this matter from the Court's active docket.

This the 27th day of August, 2019.



---

[9] Tracking Rule 20, the prayer alleges joint and several liability against all Defendants.

12